251 So.2d 841 (1971)
Donn E. DAVISON, Appellant,
v.
STATE of Florida, Appellee.
No. 40208.
Supreme Court of Florida.
July 7, 1971.
Rehearing Denied September 3, 1971.
*842 John F. Roscow, III, of Scruggs, Carmichael, Tomlinson, Roscow & Pridgeon, Gainesville, for appellant.
Robert L. Shevin, Atty. Gen., Raymond L. Marky and Ronald W. Sabo, Asst. Attys. Gen., for appellee.
CARLTON, Justice.
Appellant, an outdoor theatre operator, was convicted by a jury of violating Fla. Stat. § 847.013, F.S.A. by knowingly admitting a minor for a monetary consideration to an exhibition of motion pictures harmful to minors. Through various motions, appellant consistently attacked the constitutionality of the statute below; the denial of these motions laid the predicate for jurisdiction in this Court. Article V, Section 4(2), Florida Constitution, F.S.A. Through our decision today, we affirm the judgment entered against appellant by the Court of Record for Alachua County.
The factual circumstances of the offense warrant little elaboration. On the evening of February 12, 1970, Robert Hooten, age 15, stopped his car at the ticket booth of the Dragon Drive-In Theatre located in Alachua County. The attendant (appellant was operating the concession stand) accepted the proffered admission price without requesting identification or making inquiry as to age. Hooten was admitted into an exhibition of "The Daisy Chain," "Kiss Me Quick," and previews of "The Secret Sex Lives of Romeo and Juliet." A Sheriff Department investigator had supplied Hooten with the admission price in advance; this investigator followed the boy into the Drive-In in a separate car. On February 14, appellant was arrested for violation of Fla. Stat. § 847.013, F.S.A., and prints of the films shown were taken pursuant to warrant. Appellant appeals from his subsequent jury conviction.
The points on appeal may be divided logically between those relating to events at trial and those relating to the constitutionality of the statute.
Fla. Stat. § 847.013, F.S.A. provides that it is unlawful to "knowingly exhibit" a harmful motion picture to a minor. Appellant premised one aspect of his defense upon the theory that he had given bona fide express instructions to the ticket booth attendants on the necessity for checking identifications; therefore, the exhibition was not "knowingly made." The trial judge accepted a jury instruction reflecting this theory of defense.
But appellant complains that when the attendants were on the witness stand, proffers of their testimony relating to the receipt of instructions were refused. It is contended that this was in error because this "corroborating" testimony was essential to the defense. We fully agree that a defendant is entitled to have his employees testify as to instructions given them. However, we note that the proffered testimony was not presented as being "corroborative" at the time of the proffer since appellant had not yet testified. The proffer was not renewed subsequent to appellant's testimony, which would have been acceptable procedure. Both attendants were allowed to testify as to their methods of checking identification, and appellant testified as to his instructions to them. This *843 testimony, given by the attendants and appellant, was uncontroverted by the State. The procedures used by the attendants and the instructions given by appellant were weighed in the balance by the jury and found wanting. We find no reversible error here.
Appellant also contends that the trial court committed reversible error because the jury was allowed to view certain still photographs of scenes from a movie which was not viewed by the jury and thus stricken from evidence. The Sheriff's Department took numerous still photographs from "The Daisy Chain," "Kiss Me Quick" and the previews of "The Secret Sex Lives of Romeo and Juliet," as these films were being shown on the screen at the Dragon Drive-In. These were admitted into evidence. On the day of the trial, the jury was shown the "Romeo and Juliet" previews and the movie, "The Daisy Chain." "Kiss Me Quick" was not shown. The trial court ordered the print of the film "Kiss Me Quick" removed from the exhibits because it had not been seen; he did this pursuant to a timely objection by appellant. However, appellant made no move to object to the stills from "Kiss Me Quick". Having failed to object to the error he now complains of, the appellant is precluded from asserting this as a ground for reversal. York v. State, 232 So.2d 767 (4th D.C.A., Fla. 1969).
Appellant presents arguments against the constitutionality of Fla. Stat. § 847.013, F.S.A. which reach beyond the pertinent facts of this case as stated by appellant and agreed upon by the State. We do not approve of this manner of argument. Appellant will be held precisely to those assignments of error raised as points on appeal.
Appellant's first point relating to alleged unconstitutionality is that:
"The cited statute provides for an arrest and seizure of questioned material without notice and without a prior judicially supervised adversary hearing to determine whether probable cause exists for such arrest and seizure."
We do not find this to be the case. This is not a censorial action;[1] it is a prosecution for a criminal offense relating to exposing minors to harmful materials. The cited statute defines the offense and provides that a violation constitutes a misdemeanor. It is silent as to arrest and seizure. These events are the result of warrants issued upon probable cause when an alleged violation has occurred, just as in any case in which the violation of a criminal statute is involved.[2] Pursuant to valid warrants, the materials directly involved in the perpetration of the offense were taken and held as material evidence. When this occurs, nothing prevents the operator of a theater from showing another print of the film since the seizure is related directly to the specific offense giving rise to the warrant.
*844 Section (3) of the statute provides for separate injunctive proceedings and immediate hearings, but no injunctive action is raised in this appeal and, therefore, we make no ruling upon the injunction provisions. All that is raised is a conviction under Section (2) for the offense of showing movies to a minor which satisfy the tests given in Section (1). Both Sections (1) and (2) are modeled upon Section 484-h, New York Penal Law, McKinney's Consol.Laws, c. 40, discussed by the United States Supreme Court in Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). That Court found these sections to be constitutionally sound, and so do we.[3] We further find that neither the State nor the Federal Constitutions require a prior judicially supervised hearing for determination of probable cause prior to issuance of arrest and search warrants obtained on account of an alleged violation of Fla. Stat. § 847.013(2) (a), F.S.A. See Milky Way Productions, Inc. v. Leary, 305 F. Supp. 288 (S.D. New York 1969), aff'd per curiam, New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); United States v. Fragus, 422 F.2d 1244 (5th Cir.1970), supplemental decision, 428 F.2d 1211 (5th Cir.1970).[4]
Appellant's second point relating to the alleged unconstitutionality of Fla. Stat. § 847.013, F.S.A. is that: "THE CITED STATUTE FAILS TO PROVIDE FOR PROMPT APPELLATE CONSIDERATION AND FINAL DETERMINATION OF WHAT IS `HARMFUL TO MINORS.'" The thrust of this argument is that in obscenity-related cases, the material remains unobtainable for the public at large until termination of the appeal process; therefore, appellate review must be prompt lest a constitutionally protected freedom be unduly restricted by a slow judicial process. For precedential support, appellant cites Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and Meyer v. Austin, 319 F. Supp. 457 (M.D. Fla. 1970).
Our first response to this assertion is to note again that upon the facts as given by appellant in this case and agreed upon by the State, nothing would have prevented appellant from securing and showing another print of the film. Therefore, the asserted rationale for the necessity of a unique requirement of "prompt appellate consideration and final determination" is without merit in appellant's circumstance. Further, we continue to maintain that there is a vital and valid distinction between "prior restraint" statutes involving administrative censorial schemes or broad injunctive prohibitions aimed at preventing circulation, and criminal prosecutions involving acts committed in violation of a criminal statute. Note that Freedman was involved with restraint proceedings initiated outside of the judicial system; in this situation, a prompt judicial review is a constitutional necessity. But where a criminal prosecution is initiated in a court of law, the deficiencies of a non-judicial forum dissipate, and appellate review follows the ordinary course of litigation. This is suggested by the case of Interstate Circuit Inc. v. Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968), wherein the United States Supreme Court, citing its prior decision in Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), held:
"Appellants also assert that the city ordinance violates the teachings of Freedman v. Maryland, supra, because it does not secure prompt state appellate review. The assurance of a `prompt final judicial decision' (380 U.S., at 59, 85 S.Ct. 734) is made here, we think, by *845 the guaranty of a speedy determination in the trial court." 390 U.S., at 690, Note 22, 88 S.Ct., at 1306.
This question is treated in Meyer v. Austin, supra, 319 F. Supp. at pages 467-468, but we do not find the majority opinion persuasive. Again, our thinking is reflected in the dissent of the Honorable George C. Young, District Judge, appearing at pages 474-476. The Federal Constitution does not require that a specific provision for prompt appellate review be written into the provisions of Fla. Stat. § 847.013(2), F.S.A. In passing, we observe that appellant has made no attempt to have consideration of this cause specially expedited either here or below.[5] We also observe that under Rule 6.14, Florida Appellate Rules, F.S.A., "All appeals in criminal cases shall have precedence over other appeals and shall be placed first upon the calendar for hearing."
Appellant's third point relating to the alleged unconstitutionality of the statute is that:
"AN ANALOGOUS STATUTE, SECTION 847.011 FLORIDA STATUTES 1969, AS AUTHORITATIVELY INTERPRETED BY THE FLORIDA SUPREME COURT AND LOWER FLORIDA COURTS, PRESCRIBES AN INAPPROPRIATE LOCAL STANDARD FOR THE IDENTIFICATION OF OBSCENITY."
Specifically, appellant refers to Fla. Stat. § 847.011, F.S.A., and criticism of standards used in various Florida cases by the majority of the assembled panel in Meyer v. Austin.[6] In reviewing the case at hand, we find that appellant's complaint is not properly with Fla. Stat. § 847.013, F.S.A., because the standard given in Section (1) (f) (2)[7] was approved in Ginsberg v. New *846 York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). Appellant's real complaint is with the jury instruction interpreting the statute rendered by the trial court, to-wit:
"I further instruct you that the prevailing standards in the adult community as a whole with respect to what is suitable for minors means that standard which prevails in Alachua County, Florida, as a whole rather than in any particular locale of the Nation."
The paramount United States Supreme Court case containing a discussion of the "community versus national" standards issue is Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Though paramount, the case cannot be considered as definitive or dispositive of this issue since the Court could not reach a majority opinion, and no less than six separate opinions and one concurrence without opinion were filed. Of the four Justices taking a position on standards in Jacobellis, two (Justices Brennan and Goldberg) felt that "community" meant "national standards," and two (Chief Justice Warren and Justice Clark) were persuaded that "community" referred to local community standards.
Because the Court in Jacobellis did not announce a majority decision, we think it proper to consider the positions taken by a majority of the Justices on the Court as currently constituted. In Kingsley Int'l. Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959), Mr. Justice Black indicated his acceptance of local standards when he spoke of value judgments "as to what movies are good or bad for local communities"; 360 U.S., at 690, 79 S.Ct., at 1366. In Kingsley Books, Inc. v. Brown, 354 U.S. 436, at 446-447, 77 S.Ct. 1325, at 1331, 1 L.Ed.2d 1469 (1957), Justices Douglas and Black noted that "* * * Juries or judges may differ in their opinions, community by community. * * *" And recently, in Hoyt v. Minnesota, 399 U.S. 524, 90 S.Ct. 2241, 26 L.Ed.2d 782 (1970), the Chief Justice and Justices Harlan and Blackmun rejected (albeit in a dissent) the notion that the constitution imposes a "national and uniform measure."
Inasmuch as the United States Supreme Court has initiated the "community" test, but has not yet announced a majority decision specifically treating this issue, we now espouse the view that "community" is to be interpreted within the framework of the geographic limits of the jurisdiction in which the cause is brought to trial.[8] Therefore, we find that the instruction set out in quotation above was not erroneous, Alachua County being the limit of the jurisdiction of the trial court in this cause. We are particularly concerned that a local standard interpretation of "community" should apply in relation to juveniles, since we view the raising of children as being an inherently local community concern.[9]
For the foregoing reasons, we conclude that Fla. Stat. § 847.013(1) and (2), F.S.A., are constitutional under both the State and the Federal Constitutions. This being so, and it being our further judgment that the conviction complained of was supported *847 by the evidence and without reversible error, the Judgment appealed is affirmed.
It is so ordered.
ROBERTS, C.J., BOYD, McCAIN and DEKLE, JJ., and JOHNSON, District Court Judge, concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
This is a threshold case for Florida which, regardless of its present posture as a criminal conviction for an alleged violation of F.S. section 847.013, F.S.A., involves the larger question of the limits and restraints that may be placed by the state as censor under its police power upon exhibitions of theatrical or motion picture productions and other art media and art form expressions that move in interstate commerce from community to community throughout the nation.
With the decisional uncertainties reflected in the majority opinion in mind, I am extremely reluctant at this unsettled and uncertain stage of national law to legally support state suppression of such productions, etc., through criminal prosecutions unless clearer defined national standards are provided therefor either by the Congress or the Supreme Court of the United States authoritatively comporting with our national Bill of Rights freedoms.
There have been too many failures, too many "backfires" under community standards of states generating opposite results from those which the conscientious sponsors of suppression of things forbidden in areas of entertainment, education, appetite, and personal diversions intended for the promotion of good public morals, for us at state level to move precipitously. The celebrated Scopes case is a good example. Another was the failure to suppress bingo gambling before it was legalized.
The "bleached bones" of "noble experiments" of earlier suppression efforts in such areas are familiar landmarks strewing the trail of our history.
Many of Shakespeare's great plays would never have seen the light of day had the full fury of the Puritanical period of England arrived some forty years earlier.
Rather than push forward state criminal prosecutions in this uncertain but critical freedom-related area  as censorious precedents of suppression bearing our imprimatur  I think it would be the better part of judicial wisdom to stay the conviction in this case and retain jurisdiction until cases such as Meyer v. Austin, 319 F. Supp. 457 (M.D.Fla. 1970) are decided by the Supreme Court of the United States.
These Federal cases when decided may give us clearer guidelines for the application of section 847.013 and perhaps of F.S. section 847.011, F.S.A. as well, concerning local v. national standards.
I think this course of caution is more appropriate and would afford appellant judicious relief from precipitous state action until his concomitant federal rights are delineated with greater clarity in the Federal forum.
NOTES
[1] Therefore the rationale suggested by Gable v. Jenkins, 309 F. Supp. 998 (N.D. Ga. 1969), aff'd. 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970) does not apply; cf. United States v. Wild, 422 F.2d 34 (2nd Cir.1969).
[2] The United States District Court, Middle District of Florida, has recently taken the position that obscenity-related prosecutions are inherently different; the Court maintains that probable cause for arrest and seizure must be determined through a judicially supervised proceeding prior to issuance of warrants; see Meyer v. Austin, 319 F. Supp. 457 (M.D.Fla. 1970), and Carroll v. City of Orlando, 311 F. Supp. 967 (M.D.Fla. 1970). In each case the dissents filed by the Honorable George C. Young, District Judge, effectively demolish the majority opinions. An appeal lodged in Carroll was withdrawn April 27, 1970; but an appeal in Meyer is now before the United States Supreme Court on jurisdiction; enforcement of the Meyer decision was stayed on August 31, 1970, by Order of Mr. Justice Hugo Black. Note also, Mandell v. Carson, 309 F. Supp. 326 (M.D.Fla. 1969). We share a mutual bond of respect with our Federal Brothers, but find that we must decline to accept the majority's reasoning in Meyer and Carroll.
[3] The United States Supreme Court did not pass upon the application of Section 484-h; see Note 1, 390 U.S. 629, at 631-632, 88 S.Ct. 1274.
[4] We interpret the Circuit Court's mention of movies, on exhibit in a public theater, as relating to a censorial scheme rather than to a prosecution after an offense has been committed; 428 F.2d at 1212-1213.
[5] As to the events subsequent to appellant's arrest on February 14, 1970, we find in the record the following: March 12, 1970, appellant filed a Petition to Stay Proceedings on the ground that he was seeking to have a three-judge panel convoked to hear his complaint in the United States, District Court, Middle District of Florida; the Petition was denied March 16, 1970. On March 26, 1970, appellant filed a Motion for Witness List, a Motion to Suppress Evidence, a Motion to Dismiss, a Motion for Production of Reports, Tests and Experiments, a Motion for Statements of Particulars, a Motion for Production of Statements, Confessions and Grand Jury Testimony, a Motion for Production of State's Evidence; these were acted upon through Orders entered by the trial court on July 21, 1970. Thereafter, on July 28, 1970, appellant filed a Motion for Rehearing on Motion to Suppress Evidence and a Motion to Dismiss; these were acted upon by an Order Nunc Pro Tunc filed July 29, 1970. An adverse verdict was returned on August 5, 1970; a Motion for New Trial was filed by appellant August 17, 1970; the trial court denied the Motion on September 2, 1970 and Judgment and Sentence were filed September 9, 1970; the Notice of Appeal was filed September 9, 1970. Directions to Clerk, Designation to Reporter, and Assignments of Error were all filed by appellant September 18, 1970; a Motion to Extend Time for Filing Reporter's Transcribed Notes on Appeal was filed by appellant October 20, 1970; a Motion for Extension of Time for Clerk to Complete and File Record on Appeal was filed by appellant October 21, 1970. Appellant filed his brief here on December 16, 1970 after appellant's Motion for an Extension of Time was granted; the State filed its brief on February 4, 1971, after appellant consented to a late filing by the State; appellant's Reply Brief was filed February 25, 1971. The case began to circulate among the Justices for determination of jurisdiction on February 16, 1971, and this Court's Order scheduling argument was entered on April 14, 1971. The case was orally argued on June 2, 1971.
[6] See 319 F. Supp. 457, at 464-466.
[7] 847.013(1) (f): "`Harmful to minors' means that quality of any description, exhibition, presentation, or representation, in whatever form * * * when it:

"2. Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors. * * *"
[8] In some cases involving, among other things, a local community application question, the United States Supreme Court has reversed: Gent v. State, 239 Ark. 474, 393 S.W.2d 219 (1965), rev'd sub nom. Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); State v. Henry, 250 La. 682, 198 So.2d 889 (1967), rev'd per curiam, 392 U.S. 655, 88 S.Ct. 2274, 20 L.Ed.2d 1343 (1968); Felton v. City of Pensacola, 200 So.2d 842 (1st D.C.A.Fla. 1967), cert. denied, 204 So.2d 210 (Fla. 1967), rev'd per curiam, 390 U.S. 340, 88 S.Ct. 1098, 19 L.Ed.2d 1220 (1968). Our examination of these cases swiftly brings to mind factors other than the community question which logically warranted the reversals.
[9] Several persons found to be qualified to give opinions as to community standards of the Nation as a whole, and who resided in Alachua County, testified as to the adult community's view of the movies in question as being harmful to minors.