283 So.2d 351 (1973)
James E. RHODES, Appellant,
v.
The STATE of Florida, Appellee.
No. 41416.
Supreme Court of Florida.
September 19, 1973.
*352 Paul Shimek, Jr., Pensacola, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
DEKLE, Justice.
We deal here with the "old" Florida obscenity statute, § 847.011, which continues as law.[1] Two movie films publicly exhibited by appellant at his Navy Point Adult Theater in Pensacola, titled "He and She" and "Sex Family Robinson on the Farm" were found by a jury to be obscene in violation *353 of Florida's 1967 obscenity statute, § 847.011, which prohibits the sale, distribution, showing or possession of "any obscene, lewd, lascivious, filthy, indecent, sadistic or masochistic book, magazine ... photograph, motion picture film... ." There is no further amplification of these words in the statute[2] except (11)[3] setting forth the Roth test.[4]
Inasmuch as § 847.011(8)(b) injunctive proceedings were not invoked in this cause, the injunctive portion of the statute is of course not involved here.[5]
Appellant's offense occurred on May 5, 1971, under the earlier statute in question, § 847.011 to which our holding must of course be restricted, despite the recent June 21, 25, 1973, "cluster" of eight U.S. Supreme Court opinions on this perennial and "seemingly intractable" problem of obscenity.[6]
Appellant launches the following missiles of constitutional attack:
(1) unlawful search and seizure precluding admission of the films into evidence;
(2) non-obscenity of the films in question as a matter of law;
(3) unconstitutionality of Fla. Stat. § 847.011 because:
a) the statute does not provide for an adversary judicial hearing on obscenity prior to issuance of the warrant of seizure;
b) national and not contemporary community standards apply;
c) neither the statute, court rule nor practice and procedure in the courts provides for a prompt and final determination of the alleged obscenity.

SEIZURE WAS PROPER
Factually, appellant was tried and convicted by a jury based upon an indictment for violation of Fla. Stat. § 847.011, F.S.A. The grand jurors viewed either all or part of the two films involved. Some jurors viewed all of one film but not all of the other. Based upon affidavits submitted by the grand jurors and founded upon their collective viewing of the films as to content, the circuit judge issued a warrant for seizure of the films in question without a prior adversary judicial hearing. Immediately thereafter, the film was seized and the next day the indictment was returned by the grand jury against appellant. Motion *354 to suppress was denied. During the trial the films were actually shown to the jury, then testimony was taken. The trial judge in acting upon appellant's motions expressly declared Fla. Stat. § 847.011, F.S.A., constitutional and this direct appeal followed.[7]
Upon appellant's first challenge  seizure  he cites Roaden v. Kentucky, (1973), 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757, which reversed denial of the motion to suppress obscene films on the ground of illegal seizure. Our case is no Roaden. In Roaden the seizure was clearly erroneous in that it was made without a warrant, simply upon a viewing of the film by a county sheriff at a local drive-in theater and without any prior judicial determination of obscenity. Sub judice 1) a warrant was issued; 2) following a consideration by the judge of sufficient factual affidavits of the grand jurors who went and viewed the films. Thus there was a prior judicial determination by the circuit judge, and at all times thereafter there was an available judicial review of the ruling (though appellant sought none).[8] The seizure was legal and the motion to suppress was correctly denied.[9]

EX POST FACTO APPLIES
The new U.S. Supreme Court cases are at once both amplifying and more restrictive: they are expansive in 1) expressing the principle of "authoritative construction"[10] to amplify the statutory language in order to meet whatever test is applicable on the date of the offense in question, and 2) in laying down a prospective new test which is less restrictive than Roth-Memoirs; but these new holdings also more severely limit the state in its permissible statutory regulation of obscenity to so-called "hardcore" materials of sexual acts expressly defined either in the statute or by authoritative construction thereof.
On the matter of standards of obscenity, the U.S. Supreme Court has now afforded a sensible test and guidelines in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), decided on June 21, 1973. The new test will no doubt prove more effective in future infractions of § 847.011 and of the new Fla. Stat. Ch. 73-120. We cannot, in our view, however, by reason of ex post facto principles apply new standards in the now-judicially-approved "new test" of obscenity[11] to earlier offenses in determining the sufficiency of the statutory language to warn the average person of common intelligence as to what constitutes the prohibited offense. This is particularly true of "(c)" of the test in Miller as to "literary, etc. value". It may or may not be true of (a) and (b) in view of our statutory language and its construction as it may have been published as notice *355 to an offender on the date of the offense in question.
Sub judice the test set forth in these latest U.S. judicial holdings with respect to "c" ("literary value") as to what now constitutes obscenity was not available on May 5, 1971, as amplification of the notice to appellant of the proscribed conduct; such a modification of the old test in the new holdings cannot now be echoed to the date of the earlier offense.[12] The "old test" (Memoirs v. Mass., 383 U.S. 413, 419, 86 S.Ct. 975, 978, 16 L.Ed.2d 1 (1966)) that the allegedly obscene matter be "utterly without redeeming social value", must apply in such instance, for such was the test upon which defendant was on notice on the date (May 5, 1971) of the alleged violation. Said former test, then applicable, was correctly applied, however, in the trial below. Thus there was no error.
We hold that the "test" of what constitutes obscenity for purposes of notice of the proscribed conduct, and the test to be utilized at trial, is that which prevailed under the applicable statute as amplified by authoritative construction published at the time of the offense.[13]

NEW TEST PROSPECTIVE ONLY
As to the constitutional sufficiency of § 847.011 per se regarding no specific elaboration on the words obscene, lewd and lascivious, we must take the constitutional view that although there is a new test of obscenity in the aforementioned recent federal opinions, it does not avail us insofar as the sufficiency of the statutory language is concerned for purposes of the earlier offense before us for review. We are, of course, also aware that the U.S. Supreme Court saw fit to visit its new test retroactively as a matter of judicial construction upon its own federal statute, 18 U.S.C. § 1462, as to interstate transportation of obscene material and 19 U.S.C. § 1305(a) prohibiting importation thereof, which statutes are in fact in simpler terms than our own Florida statute. These federal statutes simply prohibit that "which is obscene or immoral."[14] Nevertheless, we do not deem the new U.S. Supreme Court test to be applicable to the earlier offense here on May 5, 1971, as to the change of standards under "c" ("literary value"), because of constitutional ex post facto principles which apply.[15]
The later enlightenment afforded by the new test cannot be visited upon the earlier offense to the extent outlined above, to shore up the rule that the statute must be sufficient to place the average person of common intelligence on notice of the proscribed conduct at the time of the offensive action.[16]

PRIOR FLORIDA "JUDICIAL CONSTRUCTION"
The unavailability of the new test, however, in the prosecution of an earlier offense, does not preclude a conviction, nor the upholding of the validity of our Florida statute. For Miller has said,
"As a result, we now confine the permissible scope of such regulation [by the state] to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed." (emphasis added)
*356 By clear and continuing judicial declarations we have for many years past "authoritatively construed" the statutory language of "lewd and lascivious." We have said in plain, understandable language that these statutory words proscribe "an unlawful indulgence in lust; eager for sexual indulgence; open and public indecency" offensive to others. Chesebrough v. State, 255 So.2d 675 (Fla. 1971), cert. den. 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676, catalogues the earlier cases, although it was not decided until December 8, 1971, subsequent to the offense here.

SUFFICIENT NOTICE TO OFFENDER
We hold the language of Fla. Stat. § 847.011 F.S.A., as heretofore authoritatively construed to be sufficient to meet the requirements of notice to the person of ordinary understanding, of the conduct proscribed as obscene, lewd and lascivious such as that here involved. Such offender has accordingly had prior notice of our constant, clear judicial determinations with respect to "lewd and lascivious" in the statute.
Former "authoritative constructions" of the statute, announced in prior court decisions, which were of public notice at the time of the offense here, apply and were chargeable to appellant at the time of his offense.[17] The record supports the convictions under these prior applicable judicial interpretations.
The courts have made as clear as reasonably necessary, the test of obscenity, if it is applied with common sense in accordance with facts. There will always be those who contend otherwise, whose only object is to continue their assertion of confusion and ambiguity and who are not really looking for a reasonable test or determination of obscenity but only wish to obscure the issue, to continue a state of confusion in which they may profit or pointlessly project their perfidious pursuit of perplexity.
We have dealt with this matter before in Chesebrough, supra, expressly upholding under prior authoritative construction the "lewd and lascivious" terminology of § 800.04 regarding acts in the presence of a minor as not unconstitutionally vague nor void for overbreadth.[18]
In Justice Adkins' opinion in Chesebrough he cites the numerous prior holdings with respect to the sufficiency of the statutory terminology of "lewd and lascivious" and refers to other holdings including the erudite opinion of the eminent Appeals Judge Donald K. Carroll of the First District Court of Appeal in Buchanan v. State, 111 So.2d 51 (Fla.App.1st 1959), wherein Judge Carroll said in this respect: (p. 57)
"It would be, of course, difficult or impossible to detail in a statute book all the acts which would constitute lewd and lascivious behavior, but there is a large body of case law on the meaning of the words `lewd' and `lascivious' (see, for instance, the numerous decisions under these words in Vols. 24 and 25 of Words and Phrases). Generally speaking, however, these words, when used in a statute to define an offense, usually have the same meaning, that is, an unlawful indulgence in lust, eager for sexual indulgence. See McKinley v. State, 33 Okla. Cr. 434, 244 P. 208. (emphasis added)
"Our Supreme Court has had occasion to define these two words in their various forms in Luster v. State, 23 Fla. 339, 2 So. 690; Pinson v. State, 28 Fla. 735, 9 So. 706; Holton v. State, 28 Fla. 303, 9 So. 716; Thomas v. State, 39 Fla. 437, 22 So. 725; Penton v. State, 42 Fla. 560, *357 28 So. 774; Whitehead v. State, 48 Fla. 64, 37 So. 302; Faulkner v. State, 146 Fla. 769, 1 So.2d 857; and Boles v. State, 158 Fla. 220, 27 So.2d 293." (p. 57)
Chesebrough then further states:
(255 So.2d 678)
"Lewdness, or open and public indecency, were offenses even at common law. The statutes throughout our country have given the term `lewdness' a broader sense so that it is no longer necessary that such act be committed in a public place or in the presence of many people. It has been held sufficient if it is an intentional act of lewdness, offensive to one or more persons present. See 30 Am.Jur.2d, Lewdness, Indecency, etc., § 1. It is well settled that a criminal statute is sufficiently certain, though it may use general terms, if the offense is so defined as to convey to a person of ordinary understanding an adequate description of the evil intended to be prohibited. We reject the argument that the statute is void for vagueness and uncertainty." (emphasis added)
Justice Adkins points out in Chesebrough that a fair opportunity is afforded upon motion in the trial court to test the legal sufficiency of the particular acts which must be charged as being lewd and lascivious. Thus the defendant can present his challenge to the sufficiency of his alleged acts as being encompassed within or lying without the statutory verbiage. If the defendant's alleged acts cannot be said reasonably to fall without the words of the statute as a matter of law, then, as in any other case, upon sufficient facts, a jury will proceed to make the factual determination from all of the evidence in each individual case whether the act or acts alleged (and here whether the films alleged) are in fact lewd and lascivious.
If sexual intercourse between husband and wife in the presence of their child to demonstrate a method of procreation (Chesebrough) is lewd and lascivious, then there can be little doubt that the same and worse sexual conduct depicted upon film between those not husband and wife and in the presence of anyone who wishes to see it is quite obviously lewd and lascivious in violation of the statute § 847.011 and any person of ordinary understanding would know it. We so hold.
We do not need to go further in our consideration of earlier judicial determinations in Florida with respect to public notice of the offense proscribed by § 847.011. As a matter of interest, however, our Fourth District appears to have considered other, direct judicial pronouncements which would apply to the statute under the Miller "judicial construction" rule. In its recent Papp v. Florida (Op. filed Aug. 6, 1973), 281 So.2d 600 (on which we of course do not pass), our Fourth District recognizes this "judicial construction" principle but finds no such construction prior to an earlier offense of June 19, 1969. Subsequently, the same 4th District (Mager, J.) in Basilone v. State (filed Sept. 11, 1973) 286 So.2d 616, confirms this principle and there affirms a 1971 conviction on the basis of prior 1970 Collins. Mitchum v. State, 251 So.2d 298 (Fla.App. 1st 1971), also constitutes a very explicit construction of the statute § 847.011 which leaves no doubt to any potential offender of the proscribed conduct.
Our attention has also been invited to the Aug. 7, 1973, order of the highly respected U.S. District Court Chief Judge Winston E. Arnow, Northern District of Florida, Pensacola Div., in Pufahl v. Wilson; Pufahl v. Caldwell; USDC. No. Dist. Fla., Nos. PCA 2623, 2571, and connected cases. Judge Arnow modified his earlier, more restrictive injunction regarding prosecutions on allegedly obscene materials, and, in light of the recent U.S. Supreme Court cases, based his order expressly upon his statement that by those cases "obscenity requirements were substantially changed" and that "other existing state statutes as construed heretofore or hereafter, *358 may well be adequate." Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607 at page 2615, 37 L.Ed.2d 419. Whether "heretofore or hereafter" constructions apply would seem to us to depend upon whether the offense was before or after the decisional constructions under consideration. In other words, only constructions existing, and therefore chargeable to a defendant, on the date of the alleged offense could constitute notice chargeable to a defendant at that point in time. To do otherwise would be to apply such "law" (construction) retroactively in violation of constitutional ex post facto principles.
Judge Arnow in Pufahl then proceeds to modify his earlier restraining order against prosecution by saying that "Florida, having heretofore given specific definitions of proscribed sexual conduct through authoritative court construction of its obscenity laws, should be permitted to proceed with criminal prosecution, subject to the requirements of Miller, for violations occurring subsequent to Florida's authoritative constructions of its law." (emphasis added)
In Judge Arnow's opinion are noted the two Florida decisions of Collins v. State Beverage Dept., 239 So.2d 613 (Fla.App. 1st 1970), and Mitchum v. State, 251 So.2d 298 (Fla.App. 1st 1971), which "supplements by quite explicit authoritative judicial construction" the proscribed "sexual conduct specifically defined" as Miller now requires.

OLD OFFENSE  OLD TEST
One area yet remains, however. That is the case which involves an offense antedating any "supplementing" constructions which are now by virtue of Miller to be "read into" the statute as notice to an offender. Such a prior case must still, in our view, be tried under the "old" Roth or Roth-Memoirs test (as the date of offense shall dictate) as the only standard then chargeable to the defendant as to that which he should not violate.

COMMUNITY STANDARDS APPLY
Insofar as community standards vis a vis "national" standards contended for by appellant are concerned, this issue has now been settled in favor of contemporary community standards. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Kaplan v. Cal., 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); Austin v. Meyer, opinion June 25, 1973, 413 U.S. 902, 93 S.Ct. 3029, 37 L.Ed.2d 1017, reversing U.S. District Court, Middle District of Florida at 319 F. Supp. 457, holding to the contrary. See also Davison v. State, 251 So.2d 841 (Fla. 1971), and United States v. Groner, 479 F.2d 577 (5th Cir.1973). The able trial judge was correct in applying local community standards in the trial which is the standard set forth in § 847.011(11).

PROMPT DISPOSITION
Finally, the contention that there was not a proper and expeditious determination of the alleged obscenity is refuted by the fact of the immediate availability of a hearing on the obscenity question before the court which was at all times open for such a hearing. Appellant simply did not avail himself of it, apparently preferring protracted procedures and the incidental benefits flowing from pending litigation and injunctions in the federal courts at the time, which allowed his continued showing of the prohibited films and the resulting mounting profits.
We therefore conclude:
1) The obscenity statute § 847.011 is valid and meets constitutional requirements. The challenge (again) of vagueness of the statutory language fails.
2) Authoritative constructions, if published on the date of the offense, apply a) to amplify obscenity statutes for purposes of meeting the new requirement for constitutionality in setting forth specific sexual conduct, and b) to provide the required notice of the proscribed conduct *359 which "must be specifically defined by the applicable state law, as written or authoritatively construed." Miller.
3) The new U.S. Supreme Court obscenity test applies only prospectively as to (c), the new, modified "value of the work" aspect of the new test, but may apply retroactively, depending upon the date of the offense, as to (b) of the test if the state law, including its authoritative construction, specifically defines on date of the offense the sexual conduct declared obscene (thus meeting the new standard) and retroactively also as to (a) that "community standards" (already in Fla. statutes) apply.
4) Sub judice, authoritative judicial decisions had been published which placed this defendant on notice of the proscribed conduct[19] and the trial and conviction were pursuant to the more severe test then applying, that the material was "utterly without redeeming social value."[20]
5) We expressly adopt, to apply hereafter, the new Miller test of obscenity as set forth in Papp, supra, to-wit: "obscene material" (or conduct) is:
"(a) Patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated.
(or)
"`(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals', where such material, taken as a whole, when viewed by the average person applying contemporary community standards, appeals to the prurient interest and lacks serious literary, artistic, political, or scientific value)."
The "double feature" has ended. The show is over; the verdict is in: Guilty.
We affirm.
CARLTON, C.J., and ROBERTS, ADKINS, BOYD and McCAIN, JJ., concur.
ERVIN, J., concurring in part and dissenting in part with opinion.
ERVIN, Justice (concurring in part and dissenting in part).
I concur in that part of the opinion which applies ex post facto principles to the new obscenity test and must of course recognize prospectively such new test of the U.S. Supreme Court.
I dissent to the remainder of the opinion, which will be more fully explicated in the case of State v. Aiuppa, Case No. 44,264, pending before this Court.
NOTES
[1] An additional obscenity statute in 1973, Ch. 73-120, was enacted substantially in accordance with the obscenity statute of the State of Georgia, Ga. § 26-2101, which had been upheld in Gable v. Jenkins, U.S.D.C., N.D.Ga., 1969, 309 F. Supp. 998, per curiam aff. Apr. 20, 1970, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595.
[2] The next sections of the obscenity statutes, §§ 847.012 and 847.013, as to persons under 17 years of age, give explicit definitions to such words and terms which are used there by the Legislature in the 1969 adoption of those sections.
[3] Fla. Stat. § 847.011(11) (formerly (10)): "For the purposes of this section, the test of whether or not material is obscene is: Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."
[4] Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Memoirs of course came later in 1966 (J. Cleland's Memoirs of a Woman of Pleasure v. Atty. Gen. of Mass., 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1) adding to the test: that "the material is utterly without redeeming social value."
[5] May v. Harper, 250 So.2d 880 (Fla. 1971); Davison v. State, 251 So.2d 841 (Fla. 1971); Austin v. Meyer, 413 U.S. 902, 93 S.Ct. 3029, 37 L.Ed.2d 1017, opinion June 25, 1973 vacating judgment of U.S. District Court, Middle District of Florida, at 319 F. Supp. 457 and remanding for further consideration in light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); and related cases of the same "cluster" of opinions of June 25, 1973.
[6] Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12200 ft. Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 (1973).
[7] Fla. Const. art. V, § 3(b)(1), F.S.A.
[8] See Fla. Stat. § 933.14, F.S.A.  Return of Property Taken Under Search Warrant.
[9] Heller v. New York, decided June 25, 1973, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 citing United States v. 37 Photographs, 402 U.S. 363, 367, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); Freedman v. Maryland, 380 U.S. 51, 57-59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).
[10] This Court had previously recognized the "amplification" principle in 1969 in State v. Reese, 222 So.2d 732, 734 (Fla. 1969), quoted in So. Fla. Art Theatres v. State ex rel. Mounts, 224 So.2d 706, 709 (Fla.App.1st, 1970).
[11] "The basic guidelines for the trier of fact must be:

(a) whether `the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest. Kois v. Wisconsin, supra, 408 U.S. 229 at 230, 92 S.Ct. 2245, at 2246, 33 L.Ed.2d 312 (1972), quoting Roth v. United States, supra, 354 U.S. at 489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." Miller
[12] United States v. Lang (1973), C.Dist. Calif., 361 F. Supp. 380.
[13] State v. Reese, 222 So.2d 732 (Fla. 1969); Co. Fla. Art Theatres v. State ex rel. Mounts, 224 So.2d 706, 709 (Fla.App.4th, 1969); Collins v. State Beverage Dept., 239 So.2d 613 (Fla.App.1st, 1970).
[14] United States v. Orito, 1973, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513; United States v. 12 200-ft. Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500.
[15] U.S.Const. 14th amd.; Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); United States v. Lang (1973), C.Dist.Calif., 361 F. Supp. 380.
[16] Franklin v. State, 257 So.2d 21 (Fla. 1971).
[17] Note 13, supra.
[18] We had the subject before us more recently in Witherspoon v. State, 278 So.2d 611 (Fla. 1973), wherein we directly upheld 6-1 the sufficiency of the statutory words "unnatural and lascivious" acts with another person under Fla. Stat. § 800.02, F.S.A., to be sufficient "notice" of the acts proscribed to be secure from a constitutional attack for vagueness.
[19] Collins v. State Beverage Dept., 239 So.2d 613 (Fla.App.1st, 1970).
[20] Roth-Memoirs, supra.