288 So.2d 483 (1973)
Donn E. DAVISON, Appellant,
v.
STATE of Florida, Appellee.
No. 40208.
Supreme Court of Florida.
December 20, 1973.
*484 John F. Roscow, III, of Scruggs, Carmichael, Tomlinson, Roscow & Pridgeon, Gainesville, for appellant.
Robert L. Shevin, Atty. Gen., Raymond L. Marky and Ronald W. Sabo, Asst. Attys. Gen., for appellee.
DEKLE, Justice.
This case is before us pursuant to mandate of the United States Supreme Court for reconsideration of our previous opinion[1] involving Fla. Stat. § 847.013, F.S.A., in light of the recent "cluster" of U.S. Supreme Court decisions in obscenity cases.[2] Having examined these decisions, we find that four issues previously raised and decided warrant reconsideration:
(1) the constitutionality vel non of Fla. Stat. § 847.013 [F.S.A.];
(2) whether the seizure of the motion picture films in question was improper under the circumstances;
(3) whether the statute in question[3] unconstitutionally fails to provide for prompt appellate consideration and final determination of whether material is "harmful to minors"; and
(4) whether the trial court erred in applying, as the appropriate community standards, the prevailing standards with respect to what is suitable for the community as a whole of Alachua County, Florida.
These issues will be discussed in the order listed above.
This is one of the numerous cases from several states pending before the U.S. Supreme Court at the time of its decision in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 and related cases in regard to constitutionality of obscenity statutes. Davison, like the others, has been returned to the respective states for reexamination and reconsideration in light of the new U.S. Supreme Court decisions. We now proceed to this reconsideration.

STATUTE CONSTITUTIONAL
We have set forth in Rhodes v. State, 283 So.2d 351 (Fla. 1973), just released, the application of these opinions with regard to the related statute § 847.011 and have upheld the statute on the basis of the principles set forth in Miller, etc. We find that the same principles apply here insofar as the issues in Rhodes were concerned and therefore cite Rhodes as the *485 basis for confirmation of the constitutionality of the present statute, § 847.013 (Minors). Moreover, there is more substantive ground for supporting the minors statute, in that this statute has explicitly set forth sexual acts and conduct required by the new cases to be "spelled out" either in the statute or in authoritative constructions thereof. In the case of this statute, one need not go beyond the four corners of the statute itself to find quite explicit definitions meeting this test.[4] In any event, the judicial constructions referred to in Rhodes back up and support the constitutionality of the statute.

SEIZURE PROPER
On the evening of February 12, 1970, a 15-year-old minor was admitted to the showing of the double feature film in question[5] without any inquiry being made as to his age or any request for identification; he had been supplied the admission price in advance by an investigator for the Sheriff's Department, who followed the boy into the drive-in in a separate car and viewed the films. On February 14, the appellant theatre operator was arrested for violation of Fla. Stat. § 847.013, F.S.A., and prints of the films in question were taken for use as evidence, pursuant to a warrant. These prints were directly involved in the perpetration of the offense and were material evidence. No effort was made to prevent the theatre operator from showing other prints of the same films. The injunctive provisions of the statute are not involved in this case.
In Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745, the U.S. Supreme Court upheld the seizure of a film in similar circumstances. In that case, a judge had issued a search warrant after personally viewing the offending films, without notice to the theatre operator or a prior adversary hearing. In the course of upholding the seizure of the film as evidence in that case, the Supreme Court noted that no claim had been been made that the seizure prevented exhibition of the movie by use of another copy, and stated that there was no absolute right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized. "In particular, there is no such absolute right where allegedly obscene material is seized, pursuant to a warrant, to preserve the material as evidence in a criminal prosecution." 413 U.S. at 485, 93 S.Ct. at 2792, 37 L.Ed.2d at 751. The court in that case observed that no "final restraint" was imposed, but that only a copy of the film had been temporarily detained, so as to preserve it as evidence.
"If such a seizure is pursuant to a warrant issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible." 413 U.S. at 487, 93 S.Ct. at 2795, 37 L.Ed.2d at 754.
In Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757, the Supreme Court struck down as unreasonable the seizure of an allegedly obscene film where the seizure was based solely on the local sheriff's personal observation of the film and was made without any warrant or prior judicial determination of obscenity, despite the fact that only one copy of the film was seized, and the further fact that *486 the seizure was for purposes of preserving the film as evidence.
In the instant case, a warrant had been issued by a judge following an inquiry into the alleged obscenity of the films in question, although the judge in this case had not, as had the judge in Heller, personally viewed the offending films. The material was seized pursuant to a warrant and for the purposes of preserving the material as evidence in a criminal prosecution, and there was no showing that the temporary detention of the film prevented the theater operator from obtaining and showing another copy of the same print. Thus, in accordance with Heller, we find that the seizure in the instant case was proper.

PROMPT REVIEW
The next issue meriting reconsideration is the question of whether Fla. Stat. § 847.013, F.S.A. unconstitutionally fails to provide for prompt appellate review. As we have noted above, nothing prevented the appellant from securing another print of the film for showing. We also note in passing that appellant had made no efforts to have this cause specially expedited, and that F.A.R. 6.14, 32 F.S.A. gives criminal appeals precedence over other appeals.
In Heller v. New York, supra, the Supreme Court noted the failure of the petitioner in that case to request expedited judicial consideration of the obscenity issue and observed that it was entirely possible that a prompt judicial determination of the obscenity issue in an adversary proceeding could have been obtained if desired. The Court also pointed out that standards of promptness applicable to a large-scale seizure of materials for destruction differed substantially from those applicable to seizure of a single copy for the bona fide purpose of preserving it as evidence in a criminal prosecution.
In the instant case, the appellant made no effort to have the cause specially expedited, and, as noted above, F.A.R. 6.14 gives criminal appeals precedence over others. Here, as in Heller, it was entirely possible for the appellant to obtain a prompt judicial determination of the obscenity issue in an adversary proceeding if he so desired. We note also that this case does not involve a large-scale seizure of materials for destruction, but merely the seizure of a single copy for the purpose of preserving it as evidence in a criminal prosecution. No "final restraint" was placed upon appellant, the injunctive provisions of the statute not being involved, and he was entirely free to obtain and show another print of the films in question if he so chose. We therefore conclude that the requirements for prompt appellate determination of the obscenity issue, so far as applicable to the instant case, have been met.

COMMUNITY STANDARD
The fourth, and most difficult, question we deal with today is that of the applicable community standards. Appellant was convicted of knowingly exhibiting to a minor a motion picture depicting sexual conduct and harmful to minors, in violation of Fla. Stat. § 847.013(2)(a), F.S.A. In defining the applicable standard, the statute refers to: "prevailing standards in the adult community as a whole with respect to what is suitable for minors." Fla. Stat. § 847.013(1)(f)(2), F.S.A. In his instructions to the jury, the experienced trial judge defined the applicable community as Alachua County.
In Miller v. California, supra, the Supreme Court has determined that the "contemporary community standards" to be applied in obscenity cases are not national standards, the Court specifically approving as "constitutionally adequate" a requirement that the jury evaluate the materials with reference to the "contemporary community standards of the State of California." 413 U.S. at 33, 93 S.Ct. at 2621, 37 L.Ed.2d at 436. This holding is reiterated in Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492.
*487 While the Supreme Court has not indicated whether the community whose standards are to be used may be geographically smaller than an entire state, we note that the Court in that case referred to the historical fact that jurors are permitted to draw on the standards of their community, and we note also that jurors are not chosen from a state-wide jury pool but rather on a county-by-county or circuit basis. Furthermore, the court in Miller stated:
"It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." 413 U.S. at 32, 93 S.Ct. at 2619, 37 L.Ed.2d at 435.
This statement would seem to indicate that "community standards" may well be based upon a community smaller than a state, such as a metropolitan area. The primary purpose of the "community standards" test, we are told, is to be certain that, so far as the material in question is not aimed at a deviant group, it will be judged by its impact on an average person, rather than a particularly susceptible or sensitive person.[6] Applying a statewide standard in a state as diverse as Florida might result in a statewide suppression of material acceptable to the community in a metropolitan area such as Miami Beach or Jacksonville, or in exhibition of materials offensive in a community whose standards differ from those of these metropolitan areas. To paraphrase the Court in Miller, it is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Marion County or Bay County accept public depiction of conduct found tolerable in Miami Beach or Key West or Jacksonville. Each is its own community with standards which may or may not differ, or from time to time change.
The United States Supreme Court has now determined that the obscenity vel non of allegedly obscene material is to be determined in the light of contemporary community standards, rather than national standards and has expressly ruled that a determination of obscenity vel on based upon the community standards of an entire state is constitutionally permissible. In so determining, the Court has not limited the applicable community to that of the state as a whole, and indeed language in the Miller opinion indicates that the standards of a geographically more limited community may be appropriate. Black's Law Dictionary defines "community" in terms of a neighborhood, a group of people residing in a locality in more or less proximity, or a society or body of people living in the same place, under the same laws and regulations, who have common rights, privileges, or interests. It is in the light of such definitions that we hold that the community by whose contemporary standards the issue of obscenity is to be determined need not be the state as a whole, but that it is constitutionally permissible to apply the contemporary community standards of a county, although not necessarily an entire county, in determining whether material is "constitutionally obscene." We conclude that the trial judge did not err in instructing the jury to apply the contemporary community standards of the adult community of Alachua County, Florida, as a whole.
Accordingly, we resolve the issues reconsidered today as follows:
(1) § 847.013 meets constitutional standards;
(2) the seizure of the prints of the films in question, under the circumstances involved, was reasonable;
(3) the provisions of Fla. Stat. § 847.013 [F.S.A.] meet the requirements for prompt appellate determination *488 of the obscenity issue, at least insofar as the injunctive provisions of the statute are not involved. (The injunctive provisions are not before us today, and we accordingly take no position on their meeting such requirements.)
(4) the trial judge did not commit error in applying, as the appropriate "community standards," the standards of the adult community of Alachua County as a whole with respect to what material is harmful to minors.
This being the case, the Judgment appealed is again affirmed.
It is so ordered.
CARLTON, C.J., ROBERTS, BOYD and McCAIN, JJ., and JOHNSON, District Court Judge, concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
In an earlier dissent in the first appearance of this case (251 So.2d 841, text 847, Fla. 1971), I expressed the view that its disposition then would be untimely because the Supreme Court of the United States had cases pending before it involving basically the same issues as the Davison case. As was envisioned, we now in 1973 consider Davison in the light of later United States Supreme Court decisions.
As stated also in my earlier dissent, haste appeared unseemly in resolving vitally important public issues in the area of pornography law including censorship, freedom of the will, and responsibility for individual conduct.
We judges of the present day may take judicial notice of any current overreaction in the name of "law and order" by political opportunism and demagoguery emanating from the state and national levels. We judges are not supposed to be "weathervanes," bowled around by current clamor. The Constitution is our constant lasting guide, regardless of current furor.
Political opportunism and demagoguery sometime outrun for a time constitutional guarantees and commonsense second thoughts. Our nation has a ludicrous history of abortive puritanical spasms, e.gs., the Anthony Comstock tour de force against pornography during the less enlightened 1890s and the early 1900s; the Tennessee Scopes trial aberration, and the "Noble Experiment" of national prohibition.
It is in this atmosphere of clamor for "law and order" this Court considers newly generated pornography legislation in light of new United States Supreme Court majority decisions, which decisions some have been so unkind as to think are infected by the political virus recently appointed judges are supposed to be inoculated against.
Taking into consideration the prevailing current of opinion the question arises as to whether the new legislation unconstitutionally travels the age-old path of police power suppression or realistically and constitutionally seeks to cope with the root causes of the prurient appetite for pornography.
In the process, the old "forbidden fruit" temptations with all their historic failures may well be ushered in again. It is amazing how slowly we learn in our pecuniary culture that old suppressive methods have a paradoxical effect. "There ought to be a law," some politicians and the fanatics cry, and the legislature churns it out. The overlay of hypocrisy, fanaticism, the smut hunt, the demagoguery of some self-serving politicians of the frenetic "law and order" brand and their "feet of clay" aftermaths, give the unthinking no pause. However, sentient juries in Jacksonville and Key West, Florida, have had second thoughts about the wisdom of pornographic suppression efforts of government, despite the pressure of fanaticism and public hysteria. *489 We judges, too, have a paramount responsibility to shrug off the incubus of political pandering and fanaticism in determining if legislation is constitutionally aberrant  we are not bound by Federal decisions from holding state statutes void which impinge upon personal liberties protected by the Constitution.
I readily agree that much of the pornographic materials sought to be suppressed by the police power are by conventional social standards reprehensibly disgraceful and of no redeeming value; are indecently inimical to good taste and are unquestionably nauseous. But the real question is, does the Constitution allow their indiscriminate wholesale suppression by criminal processes as distinguished from selective injunctive nuisance proceedings in particular case situations? Is the suppressive legislation an unconstitutional impingement upon the freedom of will and responsibility for one's conduct? Does society have the constitutional authority to censor the individual's freedom of choice in this area? His independence to pursue his own taste for entertainment and personal diversion as guaranteed by the First and Fourteenth amendments?
Once judicially sanctioned as precedents in the field of pornography, where do we set limits to governmental suppression in other areas of American life? Are there valid bases for pornography suppression by criminal laws that promote public safety, welfare, and morals? How far paternalistic can Big Brother go?
To avoid repetition, I do not undertake to set forth specifically in this case my views upon the constitutionality of F.S. Section 847.013, F.S.A., because I have said in a special opinion in Rhodes v. State (Fla. 1973), 283 So.2d 351, text 359, that I reserve expression of my views on the constitutionality of the pornography statutes until we decide State v. Auippa, Case No. 44,274, now pending before us.
However, this case ought to be reversed on grounds other than the constitutionality of F.S. Section 847.013, F.S.A. Trial error occurred in the arbitrary refusal of the trial judge to apply rules of evidence that would have insured Appellant (the defendant) a fair trial.
The trial court refused to admit proffered testimony of two persons who were the sole employees of Appellant to handle ticket collections and admissions to Appellant's drive-in theatre that he had given them explicit instructions not to admit minors to the theatre to see the X-rated movies. The statute, Section 847.013, requires scienter, the knowing exhibit by a defendant to a minor of a movie banned to him. The proffered testimony was excluded by the court on the state's objection that it was not the best evidence, the court finding that the best evidence would be from the horse's mouth, the defendant. But the best evidence rule concerns itself with documents and writings. As applied to the related situation, it was obviously irrelevant. Moreover, it denied defendant the benefit of corroborating testimony that he did not intend for minors to see the X-rated movies, having given instructions to his employees that they should not be admitted.
A defendant should be permitted to buttress his naked testimony that he had given bona fide instructions to his employees, with the full intention and expectation that they be obeyed, by the testimony of third persons if such testimony is relevant to the issues and tends to support his allegations.
A second trial error occurred when the trial judge, over objections, admitted before the jury certain still photographs of portions of movies which were not from the two movies exhibited to the minor, "The Daisy Chain," and "Kiss me Quick." Some of the still photos were from another movie, "The Secret Sex Lives of Romeo and Juliet," a preview of which was shown as the same time as the other two. The irrelevant introduction of still photographs from other movies than the ones shown the minor was erroneous. It amounted to overprosecution and was prejudicial, contrary *490 to standards prescribed for due process seizure and prosecution for exhibition of specific pornographic materials. Cf. Maryland State Board of Censors v. Times Films Corp. (1957), 212 Md. 454, 129 A.2d 833. In the context of the instant case, movies are "writings" and the rules of evidence applying to writings apply. Extraneous evidence of other "writings" than those for which an offense is charged is improper.
I think the case should be reversed for the reasons outlined.
NOTES
[1] 251 So.2d 841 (Fla. 1971).
[2] Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; Paris Adult Theatre I v. Slayton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446; Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492; U.S. v. 12 200-Ft. Reels of Super 8mm Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500; United States v. Orito, 413 U.S. 139, 93 S.Ct. 2675, 37 L.Ed.2d 513; Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745; Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757; and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993.
[3] Fla. Stat. § 847.013, F.S.A.
[4] In point of fact, § 847.013 exceeds the minimum requirements of the new obscenity test in that it specifically requires that the offending material be "utterly without redeeming social importance for minors," rather than merely having no significant political, etc., value. Fla. Stat. § 847.013(1) (f) (3), F.S.A.
[5] The films shown on the evening in question were "The Daisy Chain" and "Kiss Me Quick", along with previews of "The Secret Sex Lives of Romeo and Juliet."
[6] Miller v. California, 413 U.S. 15 at 33, 93 S.Ct. 2607 at 2620, 37 L.Ed.2d 419 at 436, citing Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56.