358 So.2d 16 (1978)
Mark BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 50559.
Supreme Court of Florida.
April 5, 1978.
Jack O. Johnson, Public Defender, Robert H. Grizzard, II, Chief Asst. Public Defender, Bartow, and Charles L. Carlton, Lakeland, for appellant.
Robert L. Shevin, Atty. Gen., and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
*17 SUNDBERG, Justice.
This appeal invites us to revisit the issue of the constitutionality vel non of Section 847.04, Florida Statutes (1975).[1] On July 3, 1976, appellant Brown was arrested and charged by information with "open profanity" in violation of Section 847.04, Florida Statutes (1975). The information was filed after appellant had uttered "offensive" remarks while in the presence of one Patrolman Newman who had answered a call to proceed to the house of appellant's father. Once the policeman arrived, the appellant got into the patrol car. Newman requested that Brown exit the automobile, at which point appellant replied he was "tired of the mother-f____ 'cause they weren't doing him right." Apparently, appellant was referring to his by-standing father. After the officer asked appellant to "hold down the profane language," Brown enunciated similar distasteful comments about his father, again in the presence of the patrolman.
Appellant was standing approximately twenty-five (25) feet from his father at the time he pronounced his derogatory remarks and was still further removed from other relatives who were standing on the porch of the house. Newman testified that while appellant's father was puzzled and angry when he arrived at the scene, the father did not become any angrier after hearing the word "mother-f____." The patrolman testified further that Brown's comments were not directed to him personally, but Newman "figured he shouldn't be out there in public using words like that."
Pursuant to Florida Rules of Criminal Procedure 3.190(c), the appellant filed a motion to dismiss the information on the grounds that the statute was unconstitutional on its face and as applied to him, and that his speech was not violative of the statute in light of the narrow construction placed on the statute in State v. Mayhew, 288 So.2d 243 (Fla. 1973). A hearing was held on the motion in the County Court of Polk County, Florida, and the motion was denied. On October 8, 1976, the appellant entered a plea of nolo contendere reserving the right to appeal the denial of his motion to dismiss. He was adjudicated guilty of violating Section 847.04, Florida Statutes (1975), sentenced to time served (three days), and fined $25. Appellant has now prosecuted an appeal in this Court alleging that the county court erred in denying his motion to dismiss on the grounds that the statute in issue is unconstitutional on its face because it seeks to regulate pure speech and because it is vague and overbroad. He also contends that his speech did not fall under the behavior proscribed by the statute. Because the trial court passed directly on the validity of Section 847.04, Florida Statutes (1975), on the face of its order denying appellant's motion to dismiss, jurisdiction vests in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.
In attacking the facial validity of Section 847.04, Florida Statutes (1975), appellant must necessarily encounter this Court's decision in State v. Mayhew, supra, wherein the identical statute was upheld as constitutional. The Mayhew Court found that the enactment of Section 847.04, Florida Statutes (1975), was a valid exercise of the State's police power and was reasonably related to the public safety, public welfare and public morals. In addition, the Court sustained the statute in the face of accusations that it was vague and overbroad after it construed the statute to limit the speech regulated to words likely to cause a breach of the peace. Relying on Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), this Court stated:
The language sought to be proscribed by Section 847.04, Florida Statutes, *18 F.S.A., falls within the narrowly limited classes of speech described by the Supreme Court in Chaplinsky which "... include the lewd and obscene, the profane, the libelous, and the insulting or `fighting words'  those which by their utterance inflict injury or tend to incite an immediate breach of the peace." In accordance with the policy of this Court to construe a statute when possible in a manner supportive of its constitutionality, we find that the language sought to be prohibited by Section 847.04, Florida Statutes, F.S.A., is that which would necessarily incite a breach of the peace.
288 So.2d at 251.
The Court later attempted to elaborate on just what kind of language "would necessarily incite a breach of the peace." It quoted from Cantwell v. State, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), in which the United States Supreme Court stated that "the provocative language which was held [in judicial decisions] to amount to a breach of the peace consisted of profane, indecent, or abusive remarks directed to the person of the hearer." The Mayhew Court, then adopted the Chaplinsky authoritative construction by narrowing the statute's scope to proscribe fighting words, although the specific holding of Mayhew does not state this limitation. Nor, does the opinion expressly define the words "necessarily incite a breach of the peace" as meaning "words likely to cause an average addressee to fight" which appears to be the critical aspect of Chaplinsky.
In the Mayhew decision, this Court felt obliged to distinguish Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Gooding arose as a result of an anti-war demonstration at an army headquarters building. The demonstrators tried to block the entrance to the building in order to prevent the inductees from entering. When the demonstrators refused to comply with the policemen's requests that they cease such conduct, an encounter arose in which the defendant, Wilson, purportedly said to a patrolman, "White son of a bitch, I'll kill you," "you son of a bitch, I'll choke you to death," and "you son of a bitch, if you ever put your hands on me again, I'll cut you all to pieces."
Wilson was convicted in Georgia State Court under a statute which provides that "any person who shall, without provocation, use to or of another, and in his presence ... opprobrious words or abusive language tending to cause a breach of the peace ... shall be guilty of a misdemeanor." Ga. Code Ann. § 26-6303 (1957) [now Ga. Code Ann. § 26-2610 (1972)]. The conviction was affirmed by the Supreme Court of Georgia. Wilson v. State, 223 Ga. 531, 156 S.E.2d 446 (1967). That court found the statute "conveys a definite meaning as to the conduct forbidden, measured by common understanding and practice," thereby discarding appellant's argument that the statute was unconstitutionally vague. Wilson filed a writ of habeas corpus in federal district court again challenging the constitutionality of the Georgia statute. Both the district court and the court of appeals held that the statute was unconstitutionally vague and overbroad. After noting probable jurisdiction, the Supreme Court of the United States agreed with the lower federal courts. The majority opinion, written by Justice Brennan, stated that a state statute which by its terms or judicial application, prohibits the use of language not within the class of "fighting words" is unconstitutionally overbroad, and it cannot withstand attack even by one whose speech would appear to fall within the category of "fighting words." Thus, the mere possibility that a statute will ensnare protected as well as unprotected speech may be sufficient to invalidate the statute.
To ascertain whether the Georgia statute had the potential to infringe upon protected areas, the Court looked exclusively to past interpretations of the statute by the Georgia courts. The Court found these past Georgia decisions had not given the statute the requisite narrow construction, thus making the statute void for overbreadth. Statements such as "God damn you, why *19 don't you get out of the road,"[2] and "you swore a lie"[3] had been held to create jury questions as to whether these words were "opprobrious." Further, Georgia's definition of "breach of the peace" encompassed "words offensive to some who hear them, and so sweeps too broadly."
The Mayhew Court distinguished Gooding on the premise that the Georgia Supreme Court had not authoritatively construed the statute to limit it to "fighting words" in prior cases. It emphasized that:
The court in Gooding [had] pointed out that authoritative construction by Georgia courts could have saved the statute in question... .
State v. Mayhew, 288 So.2d at 250.
While we agree today with the Mayhew Court that in appropriate instances a court may authoritatively construe a statute so that it does not conflict with the federal or state constitution, we cannot condone judicial excision of statute's overbreadth or clarification of its ambiguities where, as here, there is no statutory language to support judicial restructuring. Because this Court in Mayhew attempted to limit the scope of Section 847.04, Florida Statutes (1975), to spoken words addressed to a particular person which would cause that person to fight without any statutory language to support such a limitation, we are now constrained to find the statute in question violative of Article I, Section 4, Florida Constitution and, consequently, incapable of redemption. This is so because men of common understanding upon reading the statute would reasonably conclude that mere utterance of the proscribed language, without more, could subject them to prosecution. The impermissible chilling effect upon constitutionally protected speech is apparent. See State v. Saunders, 339 So.2d 641 (Fla. 1976).
In Chaplinsky v. New Hampshire, supra, the statute in issue read as follows:
No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation.
Ch. 378, § 2, of the Public Laws of New Hampshire.
The New Hampshire Supreme Court severed the statute and considered only the first part of it. That Court stated:
The section of the statute involved has two provisions. The first relates to words and names applied by one directly to another in a public place. The second refers to noises or exclamations, possibly not directed to the person derided, but with the intent expressed. The two provisions are distinct. One may stand separately from the other. Assuming, without holding, that the second were unconstitutional, the first could stand if constitutional.
State v. Chaplinsky, 91 N.H. 310, 312, 18 A.2d 754, 757 (1941).
Thus, that portion of the New Hampshire statute before the New Hampshire Supreme Court and later the United States Supreme Court provided:
No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name... .
The statute could be interpreted to prohibit only the "face-to-face words plainly likely to cause a breach of the peace by the addressee, words whose speaking constitute a breach of the peace by the speaker ..." State v. Chaplinsky, supra. This narrow interpretation was justified because the statute specifically proscribed offensive, derisive, or annoying language addressed to another person which could cause that person to fight. See Justice Ervin's dissent in State v. Mayhew, supra.
In Gooding v. Wilson, supra, the Georgia statute under review stated:

*20 Any person who shall without provocation, use to or of another, and in his presence ... opprobrious words or abusive language, tending to cause a breach of the peace ... shall be guilty of a misdemeanor.
Georgia Code Ann. § 26-6303.
On its face, this statute was even more specific than the statute examined in Chaplinsky in limiting the prohibited speech to "fighting words." It suggested that the conduct sought to be proscribed was language directed either directly or indirectly to a person tending to cause a breach of the peace. While the United States Supreme Court found that past Georgia decisions had not given the statute the requisite narrow construction, it stated, understandably, that an authoritative construction could have redeemed the Georgia act. Again, the statutory language necessary to support an authoritative construction was present had the Georgia courts chosen to so construe the statute.
Unlike the statutes examined in Chaplinsky and Gooding, Section 847.04, Florida Statutes (1975), contains no language to support the restrictive interpretation placed on the statute by the Mayhew Court. Our statute seeks to punish only spoken words, whether they be directed to a particular person or not. Pursuant to the provisions of our statute, a person could shout profanities alone in an open field, and if those words were heard by another person, he could be subject to criminal prosecution. As Justice Ervin stated eloquently in dissenting from the majority opinion in Mayhew:
There are no saving words in our statute upon which this Court can honestly state it is inoffensive to the First and Fourteenth amendments. There was such a basis in the New Hampshire and Georgia statute. Only by a bald judicial amendment similar to a legislative enactment can the statute be said not to violate freedom of speech. There is nothing in the statute to indicate it is limited to "fighting" words.
State v. Mayhew, 288 So.2d at 252.
While we recognize that the state has an important interest in proscribing face-to-face encounters which are likely to cause a breach of the peace, we cannot endorse legislative regulation of mere spoken words when the freedom to speak one's beliefs is valued so preciously in our society.
This Court has traditionally adhered to the policy that all doubts as to the validity of a statute are to be resolved in favor of constitutionality when reasonably possible. Carter v. Sparkman, 335 So.2d 802 (Fla. 1976); State v. Aiuppa, 298 So.2d 391 (Fla. 1974). However, it has also been wary of transcending its constitutional authority by invading the province of the legislature. State v. Wershow, 343 So.2d 605 (Fla. 1977); State v. Egan, 287 So.2d 1 (Fla. 1973). When the subject statute in no way suggests a saving construction, we will not abandon judicial restraint and effectively rewrite the enactment. The Florida Constitution requires a certain precision defined by the legislature, not legislation articulated by the judiciary. See Article II, Section 3, Florida Constitution. This constitutional mandate obtains for two reasons. First, if legislative intent is not apparent from the statutory language, judicial reconstruction of vague or overbroad statutes could frustrate the true legislative intent. Second, in some circumstances, doubts about judicial competence to authoritatively construe legislation are warranted. Often a court has neither the legislative fact-finding machinery nor experience with the particular statutory subject matter to enable it to authoritatively construe a state. See Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (Frankfurter, J., concurring). The judicial body might question with justification whether its interpretation is workable or whether it is consistent with legislative policy which is, as yet, undetermined.
A court is not so restricted where the statute describes activity which the state can control even though its coverage is too sweeping. In this case, the perils *21 enunciated above are not so ominous. In accordance with the court's duty to construe a statute so as not to conflict with the Constitution, the overbroad language might be excised instead of the entire statute being declared facially invalid. In the case sub judice, however, judicial excision will not produce a statute of constitutional dimension because excision cannot limit the law to fighting words directed to another as mandated by Chaplinsky v. New Hampshire, supra. We can only conclude that "[t]he separation of legitimate from illegitimate speech calls for more sensitive tools than [the legislature in § 847.04, F.S. (1975)] has supplied." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958). This is so because the freedom to speak one's thoughts is the matrix, the indispensable condition of nearly every other form of freedom, Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963); accord, Spears v. State, 337 So.2d 977 (Fla. 1976).
Accordingly, we are constrained to recede from our earlier holding in State v. Mayhew, supra, and find Section 847.04, Florida Statutes (1975), unconstitutional under the Florida Constitution because it seeks to punish pure speech.
The judgment of the county court is reversed with directions that appellant be discharged.
It is so ordered.
ENGLAND, HATCHETT and KARL, JJ., concur.
OVERTON, C.J., and ADKINS and BOYD, JJ., dissent.
NOTES
[1] § 847.04, Fla. Stat. (1975), reads as follows:

Open profanity.  Whoever, having arrived at the age of discretion, uses profane, vulgar and indecent language, in any public place; or upon the private premises of another, or so near thereto as to be heard by another, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083; but no prosecution for any such offense shall be commenced after 20 days from the commission thereof."
[2] Jackson v. State, 14 Ga. App. 19, 80 S.E. 20 (1913).
[3] Fish v. State, 124 Ga. 416, 52 S.E. 737 (1905).